UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ROTATING SOLUTIONS INC                    CASE NO.  6:21-CV-01377

VERSUS                                                 JUDGE ROBERT R. SUMMERHAYS

T A V HOLDINGS INC ET AL                  MAGISTRATE JUDGE DAVID J. AYO

## REPORT AND RECOMMENDATION

Before the Court is a MOTION TO DISMISS pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) filed by defendant Thomas Valerio ("Valerio") (Rec. Doc. 76) and a PARTIAL MOTION TO DISMISS pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendant T A V Holdings, Inc. ("TAV").  (Rec. Doc. 77).  Plaintiff Rotating Solutions, Inc. ("RSI") opposes the motions. (Rec. Doc. 83).  The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636.  Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Defendants' motions be GRANTED in part and DENIED in part.

## Factual Background

RSI, a Delaware corporation with its principal place of business in Rayne, Louisiana, is a manufacturer of "large centrifuges used to extract valuable minerals from wastewater generated in industrial processes."  (First Amended Complaint ("FAC") as Rec. Doc. 32, ¶ 7).  TAV, a Georgia corporation with its principal place of business in Atlanta, Georgia, specializes in "separation technology" wherein it separates "components of industrial residue into wastewater and valuable materials, which it then sells to its clients."  (*Id.* at ¶ 8).  Valerio, a citizen and resident of Georgia, is TAV's Chief Executive Officer ("CEO") and majority shareholder.  (*Id.* at ¶¶ 3, 11).

RSI manufactures, leases, repairs, and maintains its own centrifuges, but also performs maintenance and repair work on centrifuges manufactured by other companies. (FAC at ¶¶ 12 – 15). RSI claims TAV engaged its services beginning in July of 2020 to: (1) lease four centrifuges for placement at TAV client sites;[1] (2) to perform on-site operation, maintenance, and repair ("field work") on the four leased centrifuges; and (3) to perform maintenance and repair on four centrifuges TAV had previously acquired from other manufacturers.[2] (*Id.* at ¶¶ 21 – 58). Each purchase made by TAV for goods or services was memorialized in a series of lease agreements and invoices spanning mid-2020 through April 2021. (*Id.* at ¶¶ 66, 90 – 93).

RSI alleges that initially TAV paid timely for the goods and services it ordered in 2020, at which time TAV was leasing RSI centrifuges under Lease 1, signed on September 8, 2020, and Lease 2, signed on October 27, 2020. (*Id.* at ¶ 66; Copies of Leases 1 and 2 as Rec. Doc. 32-1 at pp. 1, 7). RSI claims that TAV began missing payments on Leases 1 and 2 and invoices for repairs to TAV centrifuges in late 2020. (*Id.* at ¶¶ 21 – 29). Under the lease agreements, invoices for rents and field work on leased centrifuges were due to be paid within 30 days. (*Id.* at ¶ 74). Despite what, by January of 2021, was a clear breakdown in payments to RSI, TAV was granted two additional leases: Lease 3, dated January 21, 2021 and Lease 4, dated February 3, 2021.[3] (*Id.* at ¶ 66; Rec. Doc. 32 – 1 at pp. 13 - 22). Similarly, RSI continued to quote and permit authorization of repairs to TAV centrifuges. RSI alleges it was motivated to continue to do business with TAV despite missed payments by periodic verbal and written promises by Valerio that payments on outstanding balances were forthcoming. (*Id.* at ¶¶ 44

---

[1]    RSI's centrifuges are identified as "Leases 1, 2, 3, and 4." (FAC at ¶ 66).

[2]    TAV's centrifuges are identified as "Sharple Units A, B, and C," and the "GN Unit." (FAC at ¶ 92).

[3]    Unlike Leases 1 and 2, the documents attached in support of Leases 3 and 4 do not appear to be electronically signed. Defendants do not dispute the validity of any lease among the parties at this time. The undersigned will assume for these purposes that all four leases were confected as alleged.

– 54).  RSI claims that TAV made partial payments on total amounts due in January, February, and March of 2021.  (*Id.* at ¶ 53).  RSI demanded payment on all outstanding charges incurred by TAV and return of all leased centrifuges by correspondence dated April 27, May 3, and May 7, 2021, all of which it claims were unanswered by TAV.  (FAC at ¶ 94; Rec. Doc. 32-1 at pp. 28 – 38).

RSI filed the instant suit against TAV and Valerio on May 21, 2021.  (Rec. Doc. 1 at ¶¶ 1 – 3).  RSI's original complaint included claims against TAV for:

(1)    surrender of property under La. R.S. §9:3322;

(2)    breach of contract as to lease agreements;

(3)    breach of contract as to invoices for repairs to TAV's centrifuges;

(4)    fraud;

RSI also asserted alternative claims for amounts due on an open account, detrimental reliance, unjust enrichment, conversion or wrongful seizure, and negligent misrepresentation.  (Rec. Doc. 1, generally).  As to Valerio, RSI asserted claims for fraud and negligent misrepresentation.  (*Id.* at ¶¶ 108 – 116).

Shortly thereafter, RSI filed a separate Motion for Surrender of Lease Property under La. R.S. § 9:3322, which was set for hearing before the undersigned's predecessor and later withdrawn.  (Rec. Docs. 8, 9, 10, 13).  Defendants filed their first Motion to Dismiss on July 7, 2021.  (Rec. Doc. 21).  RSI amended its complaint on July 30, 2021, after which Defendants' original motions to dismiss were denied without prejudice.  (Rec. Docs. 32 and 33).  As amended, RSI's complaint states claims TAV for

(1)    breach of contract as to lease agreements;

(2)    breach of contract as to invoices for repairs to TAV's centrifuges;

(3)    conversion or wrongful seizure;

(4)    contractual fraud under La. Civ. C. Art. 1953;

3

(5)    bad faith breach of contracts under La. Civ. C. Art. 1997; and

(6)    negligent misrepresentation.

RSI also asserts alternative claims against TAV for amounts due on an open account, detrimental reliance, unjust enrichment, and delictual fraud under La. Civ. C. Art. 2315. (FAC, generally).  As to Valerio, RSI's amended complaint asserts claims for

(1) contractual fraud under La. Civ. C. Art. 1953; and

(2) negligent misrepresentation.

RSI also states alternative claims against Valerio for detrimental reliance, and delictual fraud under La. Civ. C. Art. 1997.

RSI filed its Suggestion of Bankruptcy, disclosing its petition for relief under Chapter 7 of the United States Bankruptcy Code on or about November 22, 2021 in the Western District of Louisiana.  (Rec. Doc. 54)  Based on RSI's filing, the Court administratively closed this case on February 16, 2022, reserving unto RSI the right to reopen it at any time.  (Rec. Doc. 59).

Upon reopening this case, the Chapter 7 Trustee was substituted in place of RSI as the real party in interest.  (Rec. Docs. 64, 67).  On February 9, 2023, TAV and Valerio filed separate motions to dismiss RSI's First Amended Complaint.  (Rec. Docs. 76, 77).  Defendants' motions are fully briefed and ripe for consideration.

### **Applicable Standards**

Valerio's MOTION TO DISMISS alleges this court lacks personal jurisdiction over him and seeks dismissal of all claims by RSI on that basis.  (Rec. Doc. 76).  As the party asserting jurisdiction in this matter, RSI bears the burden of establishing a *prima facie* case of

jurisdiction, since this Court will not conduct an evidentiary hearing on the issue.[4]  *In re Chinese Mfd. Drywall Prods. Liab. Lit.*, 894 F. Supp. 2d 819, 836 (E.D. La. 2012) (citing *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235 (5th Cir. 2008)).

> The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiff [] for purposes of determining whether a *prima facie* case for personal jurisdiction has been established.

*Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).  "In determining whether personal jurisdiction exists, the trial court in not restricted to a review of the plaintiff's pleadings."  *Jobe v. ATR Mktg.*, 87 F3d 751, 753 (5th Cir. 1996).  Rather, the court may consider any affidavits, interrogatories, depositions, or other admissible evidence.  *Id.*

A federal court sitting in diversity possesses personal jurisdiction over a non-resident defendant to the extent consistent with the forum state's law.  Fed. R. Civ. P. 4(e)(1); *Johnston v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317 (5th Cir. 2021) (citing *Diece-Lisa Indus. v. Disney Enters.*, 943 F.3d 239, 249 (5th Cir. 2019)).  The law of the forum state may create additional jurisdictional restrictions beyond those imposed by federal due process, which a federal court sitting in that state would be "bound to apply[.]"  *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (citing *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000)).

Louisiana's "long arm" statute[5] extends jurisdiction to the full extent of federal due process, collapsing this Court's inquiry into a single analysis: (1) whether the non-resident defendant purposefully availed himself of the benefits and protections of Louisiana by

---

[4]    No jurisdictional discovery was sought or ordered in this case and, for this reason, this Court declines to impose upon Plaintiff a preponderance of the evidence burden which would accompany an evidentiary hearing.  *In re Chinese Mfd. Drywall Prods. Liab. Lit.*, 894 F. Supp. 2d at 836 (internal citations omitted).

[5]    La. R.S. §13:3201.

establishing minimum contacts in the state; and (2) whether the exercise of jurisdiction over the non-resident defendant offends "traditional notions of 'fair play and substantial justice." *Jackson v. Tanfoglio Giuseppe, SRL*, 615 F.3d 579, 584 (5th Cir. 2010) (citing *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)); *Willow Bend, LLC v. Downtown ABQ Partners, LLC*, 612 F.3d 390, 392 (5th Cir. 2010) (citing *Burger King*, 471 U.S. at 476-77).

Minimum contacts with a forum state may convey "general" or "specific" personal jurisdiction. In this case, RSI asserts specific personal jurisdiction, which permits a court to hear only those claims arising from the non-resident defendants' activities giving rise to the suit before it. *Luv N' Care, Ltd.*, 438 F.3d at 469 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).

Due Process requires that a non-resident defendant have "fair warning" that he may be subjected to suit in a particular forum based on his activities within that forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1025 (2021) (quoting *Int'l. Shoe Co. v. Washington*, 326 U.S. at 319)). Thus, we consider whether Valerio has undertaken such purposeful business activities within the State of Louisiana such that he might "'reasonably anticipate[ ] being haled into court'" in this forum. *Luv N' Care, Inc.*, 438 F.3d at 470 (quoting *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The establishment of minimum contacts with a forum state does not end the jurisdictional inquiry. Where minimum contacts are established, the court must next address the fairness prong of the analysis, which includes:

(1)  the burden on the nonresident defendant of litigating in the forum state;
(2)  the interests of the forum state in the case;
(3)  the plaintiff's interest in obtaining relief in the forum state;

6

> (4)    the judicial system's interest in obtaining an efficient resolution of controversies; and
>
> (5)    the shared interest of the states in furthering fundamental substantive social policies.

*McFadin v. Gerber*, 587 F.3d 753, 759-60 (5th Cir. 2009) (citing *Luv N' Care, Ltd.*, 438 F.3d at 473). Once jurisdiction is established, the movant bears the burden as to the fairness factors. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999).

TAV's separate motion seeks dismissal of a portion of RSI's claims based on Federal Rule of Civil Procedure 12(b)(6), which permits dismissal where the plaintiff fails to state a claim upon which relief may be granted by the court. When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir.2004). When reviewing a motion to dismiss, a district court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Fed. R. Evid. 201; *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir.2011), citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true. *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal

7

conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

<u>Analysis</u>

### *Specific Personal Jurisdiction Over Valerio*

Valerio argues that the fiduciary shield doctrine prevents RSI from demonstrating personal jurisdiction over him in this suit. (Rec. Doc. 76). Valerio does not deny establishing minimum contacts but, instead, concentrates on the argument that any contact with the forum state was undertaken solely in his role as a corporate representative and, for this reason, may not be attributed to him for jurisdictional purposes. (Rec. Doc. 76 at pp. 4 – 5).

RSI alleges Valerio undertook direct business dealings with RSI via telephone, email, text messaging and two in-person visits to RSI's Louisiana offices. (FAC at ¶¶ 12 - 55). RSI further alleges TAV maintains "an operation" in Monroe, Louisiana. (*Id.* at ¶ 9). Valerio leased centrifuges made in Louisiana, ordered service on that equipment, and sent TAV centrifuges to Louisiana for service. (FAC at ¶¶ 16, 21). The lease agreements created an ongoing, recurrent transactional relationship between the parties, as they included not only payment of rents, but also service and maintenance obligations. (Rec. Doc. 32-1). In support of these business transactions, Valerio undertook communications and travel to Louisiana. (FAC at ¶¶ 22, 24, 27, 31, 33, 46, 47, 49, 50, 55).

Valerio attests that he negotiated and approved all leases, maintenance, and repair work from his office in Georgia.  (Rec. Doc. 85 at ¶¶ 11, 12, 14).  This evidence does not controvert the specific allegations of RSI's complaint related to Valerio's purposeful, repeated transactional relationship with RSI.

The undersigned finds the alleged contacts with the forum state to be purposeful, substantial, and sufficient to subject Valerio to the jurisdiction of this Court.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) ("[W]e have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequence of their activities.") (quoting *Travelers Health Ass'n. v. Virginia*, 339 U.S. 643, 647 (1950); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212-13 (5th Cir. 1999) (internal citations omitted) (where communications directed at the forum state are the basis of a cause of action, the general rule that communications alone are insufficient to establish minimum contacts is inapplicable.).

The fiduciary shield doctrine dictates that "'[e]ven if a defendant corporation has established minimum contacts by contracting with the plaintiff in a forum state, a court may not exercise jurisdiction over a corporate representative whose activities were directed toward the forum state solely on behalf of the corporation, in his capacity as a corporate representative.'"  *J.A.H. Enterps., Inc. v. BLH Equip., LLC*, 2016 WL 94202565, * 6 (M.D. La. Aug. 31, 2016) (quoting *Southern Filter Media, LLC v. Halter*, No. 13-CV-116, 2013 WL 3423269, *4 (M. D. La. July 8, 2013) (citing *Miller v. Am. Gen. Fin. Corp.*, 2002 WL 2022536, *12 (E.D. La. Sept. 4, 2002)).

RSI asserts Louisiana law claims against Valerio for fraud and negligent misrepresentation.  (FAC at ¶¶ 141 – 48, 152 – 56).  Where, as here, a plaintiff alleges an individual corporate representative committed fraud under Louisiana law, the fiduciary

9

shield doctrine does not apply. *Willow Bend*, 612 F.3d at 393-94 n. 6 (allegations of individual tortious activity are not foreclosed by the fiduciary shield doctrine, even where the individual defendant was acting within the scope of his employment at the time of the alleged tort). Valerio's motion asks for what amounts to a reverse application of the fiduciary shield doctrine, arguing that no matter what claims RSI may state against him, conduct undertaken while conducting business for his employer is not actionable. (Rec. Doc. 76-1 at pp. 5 - 6). As explained by the Fifth Circuit in *General Retail Services, Inc. v. Wireless Toyz Franchise, LLC*, "…while the fiduciary-shield doctrine could prohibit this court from ascribing the acts of [a corporate entity] to [the individual defendant], it does not prohibit [him] from being held personally liable for his own tortious conduct simply because he is an officer of a corporation." 255 Fed. Appx. at 795. As explained below, this Court finds RSI's allegations of fraud and negligent misrepresentation sufficiently plead at this stage of the case to support further proceedings. Accordingly, this Court will recommend Valerio's motion be denied regarding application of the fiduciary shield doctrine.

Valerio next argues that even if the Court determines he is subject to personal jurisdiction in the Western District of Louisiana, the Court should decline to exercise such jurisdiction based on application of the fairness factors. Specifically, Valerio argues that the burden to defend himself in Louisiana is significant because he is a resident of Georgia. (Rec. Doc. 76-1 at p. 7). Valerio cites the substantial costs of travel and retention of local counsel, as well as the inconvenience of these requirements. (*Id.*). Valerio further argues that

> [t]o the extent Louisiana has any interest in this action, that interest is minimal given that performance under these lease agreements was made outside the state, and further reduced given that the only claims with a 'local flavor,' i.e., those for return of certain equipment, have since fully abated.

(Rec. Doc. 76-1 at p. 7).

Conversely, RSI argues that Louisiana has a substantial interest in overseeing fraud claims brought by a Louisiana corporation with its principal place of business in Louisiana. (Rec. Doc. 83-1 at p. 17). RSI further argues that any inconvenience or increased costs are solely caused by Valerio's own tortious conduct and, for this reason, transferring the burden and cost of travel onto RSI is unjust. (*Id.*).

> To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it…It is rare to say the assertion is unfair after minimum contacts have been shown.

*Wien Air*, 195 F.3d at 215 (quoting *Burger King*, 471 U.S. at 477 and citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995).

Having considered the arguments of the parties, this Court will recommend further denial of Valerio's motion as it concerns the fairness and reasonableness analysis. Based on application of the fairness factors, the exercise of personal jurisdiction over Valerio in this case does not "offend traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987) (citing *Int'l. Shoe*, 326 U.S. at 316). Although certain aspects of the contracts entered into by the parties in this case were to be performed outside of Louisiana, the centrifuges sought by defendants were made in Louisiana and contracted to lease by a Louisiana corporation. Similarly, field work performed in other states was hired and coordinated from Louisiana. Accordingly, the fact that products and services were distributed to TAV's clients in states such as Georgia, Florida, Ohio, and New Jersey does not outweigh the Louisiana's role as the nexus of the contracts and alleged conduct at issue. Additionally, TAV sent its own centrifuges for service at RSI's Louisiana offices. (FAC at ¶ 5). Moreover, Valerio's uncontroverted contacts with the forum state are the sole basis for RSI's claims against him in this suit. *Wien Air*, 195 F.3d at 215 (citing *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 548 (5th Cir.

11

1985)) ("If a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities that give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the due process clause, given the obvious interests of the plaintiff and forum state.").

### *Failure to State a Claim as to Defendants*

Both motions before the Court seek dismissal of relevant claims under Federal Rule of Civil Procedure 12(b)(6).  We address the sufficiency of RSI's claims as to Valerio and TAV below.

#### *Fraud and Negligent Misrepresentation*

Louisiana law recognizes causes of action for contractual fraud by alleging fraud in the creation of a contract; and delictual fraud by alleging fraud in the performance of a contract.  La. Civ. C. Art. 1953; *Jeanes v. McBride*, No. 16-CV-1259, 2019 WL 2387863 *3 (W.D. La. 6/4/2019).  According to La. Civ. C. Art. 1953,

> [f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss of inconvenience to the other.  Fraud may also result from silence or inaction.

Contractual fraud requires the following elements: (1) a misrepresentation, suppression, or omission of the truth; (2) an intent to obtain an unjust advantage or to cause damage to another; and (3) the fraudulent statement or omission must be a cause of the victim's consent to the contract.  *Taylor v. Dowling Gosslee & Assocs., Inc.*, 22 So. 3d 246, 255 (La. App. 2 Cir. 2009) (citing *Shelton v. Standard / 700 Assocs.*, 798 So. 2d 60 (La. 2001).

RSI alleges Valerio misrepresented forthcoming payments on amounts owed to it under various contracts; that Valerio knew at the time of each statement that payments promised would not be sent; and that RSI justifiably relied upon Valerio's deliberate

12

misrepresentations, causing RSI to continue to provide goods and services despite non-payment. (FAC at ¶¶ 46 – 55, 134 – 140).

The contracts at issue in this case are of two types: written lease agreements with associated invoices and quotes approved by TAV with associated invoices. RSI attached copies of these documents to its Original Complaint.[6] (Rec. Doc. 1-3, *et seq.*). The lease agreements elect governance under Louisiana law and contain "Lease Payment" provisions, dictating that the lessee agrees to pay invoices "on the date designated on the invoice" and that the payment terms are "NET 30 days[.]" (Rec. Doc. 32-1 at pp. 3 – 22). Subsection 7, entitled "Defaults" provides that failure to fulfill "any obligation under this Agreement" places the lessee in default. (*Id.* at pp. 3, 9, 15). A lessee may cure such default within 7 days, failure of which entitles the lessor to exercise a variety of options, including repossession of equipment. (*Id.*). Subsection 21, known as an "integration clause," states that the lease agreement constitutes the entire agreement between the lessor and lessee and "supersedes any prior understanding or representation of any kind preceding the date" of the lease agreement. Importantly, this subsection also provides that the lease agreement "may be modified in writing and must be signed by both" the lessor and the lessee. (*Id.* at pp. 5, 11, 17).

RSI's contractual fraud claims should be separated into two types: (1) as to Leases 1 and 2, allegations that Valerio's representations caused RSI to amend the terms of those lease agreements, permitting continued performance by RSI under those contracts despite

_____

[6]    RSI's attached copies of Leases 1, 2, 3, and 4 to its FAC. (Rec. Doc. 32-1). RSI's original complaint featured a number of additional attachments, specifically copies of invoices and an affidavit from RSI's Controller, Nick Guidroz, certifying those invoices. (Rec. Doc. 1 – 2, - 28). RSI's amended complaint (Rec. Doc. 32) omitted a majority of these initial attachments, including only Leases 1 – 4, but referred to the collection of invoices between the parties throughout. This Court considers these documents, though not specifically attached to the amended complaint, because they are "incorporated by reference." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

non-payment, and (2) as to Leases 3 and 4, allegations that Valerio's representations caused RSI to enter into those new contracts, despite TAV's failure to make payments due under prior contracts.

Louisiana law permits the amendment, orally or by conduct, of a written contract, even where the contract contains a provision requiring amendment by writing.  *Taita Chem. Co., Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377, 386 – 87 (5th Cir. 2001) (internal citations omitted); *Arcadis U.S., Inc. v. Stryker Demo. & Environ. Svs., LLC*, Civ. Act. No. 20-CV-0471, 2023 WL 4394156 *4 (W.D. La. 7/6/2023) (collecting cases); *Lantech Const. Co., LLC v. Speed*, 15 So. 3d 289 (La. App. 5 Cir. 2009) (citing *Rhodes Steel Bldgs., Inc. v. Walker Const. Co.*, 813 So. 2d 1171, 1177 (La. App. 2 Cir. 2002): *Schindler Elevator Corp. v. Long Prop. Holdings, LLC*, 182 So. 3d 233, 241 (La. App. 2 Cir. 2015) (citing *Monroe v. Physicians Behavioral Hosp.*, LLC, 147 So. 3d 787 (La. App. 2 Cir. 2014)).   RSI alleges it entered into Lease 1 on September 8, 2020 and Lease 2 on October 28, 2020.  (Rec. Doc. 32-1 at ¶ 66).  RSI claims TAV initially paid amounts due but ceased making payments sometime in 2020 or 2021.  (*Id.* at ¶ 73).  RSI alleges Valerio made oral and written promises to pay amounts which were, at the time of such promises, past due under the leases, which induced RSI to continue its relationship with TAV under the lease agreements with amended terms, *i.e.*, treating TAV as though they were not in default and permitting late payments without interruption of goods and services.  RSI's allegations as to Leases 1 and 2 are sufficient to state claims for contractual fraud based on oral amendment.  Whether Valerio's alleged promises were sufficient to effect an amendment of Leases 1 and 2 is a fact question that this Court need not consider under Fed. R. Civ. P. 12(b)(6).  *Arcadis*, 2023 WL 4394156 at * 4 ("'It is a question of fact, therefore, as to whether there were oral agreements that modified the written contract.'") (quoting *Pelican Elec.*

*Contractors v. Neumeyer*, 419 So. 2d 1, 5 (La. App. 4 Cir. 1982), writ denied, 423 So.2d 1150 (La. 1982)).

RSI's contractual fraud claims as to Leases 3 and 4 differ in that they allege Valerio's promises of payment on amounts due under other, prior contracts induced them to enter into these leases despite TAV's history of non-payment. As explained above, Leases 3 and 4 contain integration clauses. Whereas oral or behavioral amendment relates to post-contractual side agreements by the parties, integration clauses concern pre-contractual side agreements. Since the parties are not bound by the contract at the time of such side agreements and are free to include provisions memorializing them, the presence of an integration clause forecloses claims based on prior oral agreements. *Matter of Goodrich Petroleum Corp.*, 894 F.3d 192, 203 n. 54 (5th Cir. 2018) (quoting *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 564 (5th Cir. 2005) (noting that "the purpose of an integration clause is to 'negate[ ] the legal introduction of parol evidence'"). Based on the foregoing, RSI's claims against Valerio and TAV for contractual fraud concerning Leases 3 and 4 should be dismissed.

Aside from the lease agreements discussed above and the related invoiced field service work, RSI claims that TAV failed to pay amounts due for work performed on TAV's own centrifuges. (FAC at ¶¶ 89 – 94). RSI does not specify, and this Court is not able to discern which invoices, attached to RSI's original complaint, relate to leased centrifuges and which relate to TAV's own centrifuges. (Rec. Docs. 1-9 – 1-25). RSI's invoices contain payment provisions, requiring payment at the time of receipt of the invoice or within 30 days. (*Id.*). Insofar as these invoices do not represent work performed pursuant to one of the four lease agreements previously discussed, such invoices do not contain an integration clause or requirement of amendment in writing. Accordingly, to the extent that such invoices represent claims for contractual fraud based on amendment of terms by Valerio's alleged oral

15

and written promises, RSI's claims are sufficiently stated to survive dismissal at this stage. Similarly, to the extent that such invoices represent claims for contractual fraud based on inducement to contract, such claims are not foreclosed and are sufficiently stated to survive dismissal. This Court will recommend that RSI's contractual fraud claims be dismissed as to Leases 3 and 4 and that Valerio and TAV's motions to dismiss be denied as to all remaining contractual fraud claims.

This Court notes that Louisiana law permits contractual fraud claims against a corporate officer in his individual capacity where such claims are premised on "fraud, deceit, or ill practices." *Altex Ready-Mixed Concrete Corp. v. Employers Comm. Union Ins. Co.*, 308 So. 2d 889, 891 – 92 (La. App. 1 Cir. 1975) (citing *Texas Indus., Inc. v. Dupuy & Dupuy Developers, Inc.*, 227 So. 2d 265, 269 (La. App. 2 Cir. 1969). Accordingly, Valerio's motion should be denied insofar as it argues Valerio's non-party status as to any contracts between RSI and TAV warrants dismissal of contractual law claims. (Rec. Doc. 76-1 at pp. 14 – 15).

Delictual fraud claims arise from La. Civ. C. Art. 2315, which provides, in part that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2315 establishes Louisiana's general tort law, which permits recovery only where a plaintiff establishes four elements: (1) duty; (2) breach; (3) cause in fact, and (4) actual damages. *Becnel v. Grodner,* 982 So. 2d 891 (La. App. 4 Cir. 2008) (citing *Harris v. Pizza Hut of La., Inc.*, 455 So. 2d 1364, 1369 – 70 (La. 1984)). Thus, a claim for fraudulent misrepresentation or suppression must identify a duty to speak or disclose the information withheld. *Id.* at 894 (citing *Green v. Gulf Coast Bank*, 593 So. 2d 640, 632 (La. 1992). After identifying a duty owed by the defendant, a plaintiff must show (1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury. *Newport Ltd. v. Sears Roebuck & Co.*, 6 F.3d 1058, 1068 (5th Cir. 1993).

16

RSI asserts alternative causes of action against Valerio and TAV for delictual fraud. In contrast to contractual fraud claims, delictual fraud claims arise from "a general duty owed by all persons." *Terrebone Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 886 - 87 (5th Cir. 2002). Under Louisiana law, a party may remain silent without violating a rule of law or equity, but when a party does voluntarily speak and conveys information that may influence another's conduct, he is bound to disclose the "whole truth." *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 419 (5th Cir. 2008) (quoting *Am. Guar. Co. v. Sunset Realty & Planting Co.*, 23 So.2d 409, 455-56 (La. 1944)). RSI plainly alleges Valerio voluntarily conveyed oral and written promises to make payments on amounts due and that these misrepresentations were made knowingly and with an intent to induce further provision of goods and services without payment. (FAC at ¶¶ 141 – 148). What remains is RSI's burden to demonstrate it reasonably relied upon Valerio's alleged misrepresentations. As explained above, Louisiana law permits amendment of contracts orally or by conduct, even where a contract includes an integration clause and requires amendments be made in writing. For this reason, RSI's delictual fraud claims arising from Leases 1 and 2 may be viable if a factfinder determined RSI's reliance upon Valerio's alleged misrepresentations to be "justifiable." *Cenac v. Orkin, LLC*, 941 F.3d 182, 198 (5th Cir. 2019).

This Court will not recommend dismissal of RSI's delictual fraud claims associated with Leases 3 and 4 although Valerio's alleged misrepresentations were pre-contractual and, as explained by the Fifth Circuit in *Matter of Goodrich Petroleum*, reliance thereon would not be reasonable as a matter of law where integration clauses exist. *Water Craft Mgmt., LLC v. Mercury Marine*, 426 Fed. Appx. 232, 237 (5th Cir. 2011) (citing *Drs. Bethea, Moustoukas, and Weaver, LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403-04 (5th Cir. 2004), *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1330 (5th Cir. 1994)). RSI's delictual fraud

claims are stated in the alternative, such that dismissal prior to a finding on the validity of the contracts alleged is unwarranted.

Federal Rule of Civil Procedure 9(b) requires that fraud be plead with particularity, including the "who, what, when, where, and how of alleged fraud." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (internal citations omitted).

> Although the actor's malice, intent, or knowledge 'may be averred generally,' [a plaintiff] 'must set forth specific facts that support an inference of fraud.' This requirement can be satisfied [by allegations of fact that] (1) show the defendants' motive to commit fraud; or (2) identify circumstances that indicate their conscious behavior, 'though the strength of the circumstantial allegations must be correspondingly greater.'

*Colonial Oaks Assisted Living Lafayette, LLC v. Hannie Dev., Inc.*, 972 F.3d 684, 689-90 (5th Cir. 2020) (citing *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994), *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018-19 (5th Cir. 1996)).

RSI bases its contractual fraud claims on detailed allegations of business negotiation among the parties. RSI alleges Valerio made promises to pay for goods and services which, at the time of each statement, he knew TAV did not intend to honor. (FAC at ¶¶ 134 − 40). RSI specifically alleges Valerio promised in oral, written and text communications to various RSI employees that TAV was sending payments due on various invoices, none of which were ever sent. (FAC at ¶¶ 46, 47, 49, 50). RSI claims that these promises by Valerio induced RSI to continue to provide goods and services, despite TAV's accrual of growing debts to RSI for various leases and invoices. (*Id.* at ¶¶ 16 − 20). Valerio argues not that payments were timely made, but that the failure of TAV to make timely payments is being mischaracterized as fraud by RSI when, in fact, it amounts to nothing more than breach of contract (Rec. Doc. 87 at p. 1).

That Defendants' theory of the case differs from that advanced by RSI is irrelevant. Valerio's motion argues for dismissal of claims based on legal insufficiency. (Rec. Doc. 76-1 at pp. 8 – 21). Accordingly, the proper analysis remains focused on the allegations of RSI's amended complaint.

Louisiana Civil Code Article 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unfair advantage for one party or to cause a loss of inconvenience to the other." Louisiana law does not permit claims of fraud based on promises to perform an act in the future but does permit such claims based on "a promise made with no intent to perform.". *Koerner v. CMR Construction & Roofing, LLC*, 910 F.3d 221, 230 (5th Cir. 2018) (quoting *Taylor v. Dowling Gosslee & Assocs.*, 22 So. 3d 246, 255 (La. App. 2 Cir. 2009)). Louisiana law provides that if, at the time of the promise to pay, the corporate representative is aware that the corporation is unable to fulfill the obligation incurred, any knowing misrepresentation of intent to pay may constitute fraud. *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 489 (5th Cir. 2009) (internal citations omitted).

"'Generally, 'there is no inference of fraudulent intent not to perform from the mere fact that a promise made is subsequently not performed.'" *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 385-86 (quoting *United States v. Shah*, 44 F.3d 285, 293 (5th Cir. 1995)). Allegations of fraud may be supported with circumstantial evidence. *In re Deepwater Horizon*, 857 F.3d 246, 251 (5th Cir. 2017) ("A person's state of mind is rarely susceptible of proof by direct evidence, so specific intent to defraud may be, and most often is, inferred from the totality of the circumstances, including indirect and circumstantial evidence."); *Lomont v. Bennett*, 172 So.3d 620, 629 (La. 2015) (noting that "circumstantial evidence, including highly suspicious facts and circumstances, may be considered in

19

determining whether fraud has been committed."). "'[W]here substantial nonperformance is coupled with other probative factors, such as 'where only a short time elapses between the making of the promise and the refusal to perform it, and there is no change in circumstances,'" fraudulent intent may be inferred. *Willard*, 336 F.3d at 386 (quoting 37 Am. Jur. 2d, Fraud and Deceit, § 478 (footnotes omitted); *Shah*, 44 F.3d at 293 n. 14.

RSI alleges at least four instances in which a Valerio made oral or written promises to make payments on amounts due under various invoices. (FAC at ¶¶ 44 – 55). RSI further alleges that Valerio promised contemporaneous payments in each instance but made no payments. (*Id.*). Considering these uncontroverted allegations, which we take as true for these purposes, RSI sufficiently states its claims for fraud under Rule 9 and this Court will recommend Defendants' motions be denied as to RSI's alleged failure to state claims for fraud with sufficient particularity.

RSI also asserts claims against TAV and Valerio for negligent misrepresentation under Louisiana law. (FAC at ¶¶ 152 – 156). Defendants seek dismissal of these claims based on their argument that reliance on Valerio's alleged misrepresentations and omissions was not reasonable as a matter of law. (Rec. Docs. 76-1 at pp. 19 – 21, 77-1 at pp. 12 – 16). Negligent misrepresentation, encompassed within La. Civ. C. Arts. 2315 and 2316, features four elements: (1) a duty on the part of the defendant to supply correct information; (2) …a breach of that duty…by omission [or] affirmative misrepresentation; (3) damages; and (4) reasonable reliance by the plaintiff on defendant's omission or affirmative misrepresentation. *Keenan*, 575 F.3d at 490 n. 15 (quoting *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008), *cert denied*, 555 U.S. 1046 (2008)). As explained above, this Court finds RSI's amended complaint sufficiently alleges a duty, breach, damages and a reasonable reliance regarding Valerio's alleged misrepresentations. As is true for RSI's fraud-based claims, Louisiana law dictates that RSI's negligent misrepresentation claims as

20

to Leases 1 and 2 should be preserved, while such claims as to Leases 3 and 4 must be dismissed since reliance upon prior promises not included in the after-executed documents is unreasonable as a matter of law.  As explained above, the invoices attached to RSI's original complaint do not contain integration clauses.  Accordingly, RSI's alleged reliance may not be deemed "unreasonable" as a matter of law and all such claims should be preserved for further proceedings.

### *Unjust Enrichment*

TAV seeks dismissal of RSI's alternative claim for unjust enrichment, pointing out that RSI asserts the existence of valid, enforceable contracts between the parties.  (Rec. Doc. 77-1 at pp. 7 − 9).

> In Louisiana there are five requisite elements for a successful unjust enrichment claim:
>
> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment or impoverishment, and finally (5) the action will only be allowed when there is no other remedy at law, i.e., the action is subsidiary or corrective in nature.
>
> '[I]f there is a contract between the parties it serves as a legal cause, an explanation for the enrichment…[O]nly the unjust enrichment for which there is no justification in law or contract allows equity a role in the adjudication.

*Drs. Bethea, Moustoukas and Weaver LLC*, 376 F.3d 399, 407 (5th Cir. 2004) (internal citations omitted).

This Court agrees that, given RSI's clear allegations of valid, enforceable contracts between the parties, Louisiana law bars any equitable claim for unjust enrichment as to TAV in this suit.  On that basis, this Court will recommend that TAV's motion be granted as to RSI's alternative claim for unjust enrichment.

### *Suit on an Open Account*

TAV argues that RSI alleges no facts that would tend to show the existence of an open account under Louisiana law and, for this reason, dismissal is appropriate. (Rec. Doc. 77-1 at pp. 3 – 5).

La. R.S. 9:2781 provides Louisiana's law on open accounts, providing, in part,

> [w]hen any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant.

La. R.S. 9:2781(A). Subsection (D) further defines an open account as "any account for which a part or all of the balance is past due." The existence of and the amount owing on an open account are fact questions. *Gulfstream Servs., Inc. v. Hot Energy Servs., Inc.*, 907 So. 2d 96, 99 (La. App. 1 Cir. 2005) (citing *Townsend v. Urie*, 800 S. 2d 11, 15 (La. App. 1 Cir. 2001) *writ denied*, 797 So. 2d 674 (La. 2001); *Sandoz v. Dolphin Servs., Inc.*, 555 So. 2d 996, 997 (La. App. 1 Cir. 1989)). An open account necessarily involves an underlying agreement between the parties, from which the debt derives. *Brown v. McGinity*, 347 So. 3d 900, 905 (La. App. 1 Cir. 2022) (citing *Advanced Leveling & Concrete Solutions v. Lathan Co., Inc.*, 316 So. 3d 509, 513 (La. App. 1 Cir. 2020).

RSI's claim for amounts due under an open account is stated in the alternative. (FAC at ¶ 117). TAV cites no authority barring RSI's alternative claim on the basis that its primary claims are advanced under contract theory. Moreover, as discussed above, Louisiana law permits the amendment of written agreements orally and by conduct. RSI's allegations are sufficient to survive dismissal at this juncture of litigation and, for this reason, this Court will recommend TAV's motion be denied as to RSI's alternative claim for suit on an open account.

***Detrimental Reliance***

TAV and Valerio seek dismissal of RSI's detrimental reliance claims, asserting such claims are foreclosed by RSI's allegations of contracts between the parties. (Rec. Doc. 76-1 at pp. 9 -12; Rec. Doc. 77-1 at pp. 5 – 7).

Claims for detrimental reliance under Louisiana law have their basis in La. Civ. C. Art. 1967, which provides,

> [a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.

Thus,

> a party must prove the following by a preponderance of the evidence: (1) a representation by conduct or word; (2) made in such a manner that the promisor should have expected the promise to rely upon it; (3) justifiable reliance by the promisee; and (4) a change in position to the promisee's detriment because of the reliance.

*In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007) (citing *Suire v. Lafayette City-Parish Govt.*, 907 So. 2d 37, 58-59 (La. 2005)).

Defendants' argument in favor of dismissal centers on element three, the reasonableness of the reliance alleged. Specifically, Defendants assert that contracts containing integration clauses, executed by the parties, render any reliance on extraneous promises by Valerio unreasonable as a matter of law, warranting dismissal.

As discussed above, Lease Agreements 1 and 2 were executed before Valerio's alleged oral and written representations, rendering the integration clauses in those contracts inapplicable as to subsequent promises. A different result obtains as to Lease Agreements 3 and 4, which RSI alleges were executed prior to or contemporaneous with Valerio's alleged representations. This Court declines to recommend dismissal of detrimental reliance claims related to Lease Agreements 3 and 4 and any post-representation invoices for repairs to TAV

23

centrifuges on the basis that RSI's detrimental reliance claims are expressly plead in the alternative, contemplating the circumstance that one or more contracts at issue are determined to be unenforceable. (FAC at ¶¶ 121 – 125).

RSI's First Amended Complaint specifically alleges multiple misrepresentations by Valerio, made in such a manner as to influence RSI to rely upon them, and that RSI justifiably relied upon Valerio's misrepresentations to its detriment in continuing to provide goods and services for which Defendants never intended to pay. (*Id.*). Considering RSI's allegations, made in the context of an alternative claim, this Court will recommend Defendants' motions be denied as to RSI's detrimental reliance claims.

### Bad Faith Breach of Contract

Under La. Civ. C. Art. 1997, "[a]n obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." TAV seeks dismissal of RSI's claim against it for bad faith breach of contract under La. Civ. C. Art. 1997, arguing RSI fails to allege specific facts showing TAV acted in bad faith. (Rec. Doc. 77-1 at pp. 19 – 20). Louisiana law attributes to every contract an "'implied covenant of good faith and fair dealing.'" La. Civ. C. Art. 1759; *Whitney Bank v. SMI Companies Global, Inc.*, 949 F.3d 196, 210 (5th Cir. 2020) (quoting *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997)). Comment (b) to La. Civ. C. Art. 1997 provides that "[a]n obligor is in bad faith if he intentionally and maliciously fails to perform his obligation." "[T]o hold a defendant liable for a bad faith breach of a contract, a plaintiff must show that (1) the defendant consciously breached the contract (2) for dishonest or morally questionable motives." *Brown v. Phoenix Life Ins. Co.*, 843 Fed. Appx. 533, 543 (5th Cir. 2021) (citing *Volentine v. Raeford Farms of La., LLC*, 201 So. 3d 325, 338 (La. App. 2 Cir. 2016).

RSI's amended complaint alleges that TAV knowingly breached its obligation to pay RSI for goods and services and did so in an effort to obtain such goods and services without

24

payment.  RSI cites ongoing litigation against TAV and Valerio in a variety of jurisdictions, all cases featuring similar claims against Defendants as evidence of Defendants' intent and malice.  (FAC at p. 1).  This Court may take judicial notice of the existence of such other litigation but may not extend its judicial notice to findings of fact in those cases.  *In re SI Restructuring, Inc.*, 480 Fed. Appx. 327, 329 (5th Cir. 2012) (internal citations omitted).

"Bad faith" generally "implies actual or constructive fraud or a refusal to fulfill contractual obligation, not an honest mistake as to actual rights or duties."  *Delaney v. Whitney Nat'l. Bank*, 703 So. 2d 709, 718 (La. App. 4 Cir. 1997) (citing *Adams v. First Nat'l. Bank of Commerce*, 644 So. 2d 219, 222 (La. App. 4 Cir. 1994), *writ denied*, 649 So. 2d 411 (La. 1995).  Considering the sufficiency of RSI's contractual and delictual fraud claims as discussed at length above, this Court will recommend denial of TAV's motion to dismiss as to RSI's claim for bad faith breach, since a finding of fraud in this case may support this Louisiana law claim.

### *Conversion and Wrongful Seizure*

TAV seeks dismissal of RSI's claim for conversion and/or wrongful seizure.  (Rec. Doc. 77-1 at pp. 9 – 10).  TAV argues that the basis for such a claim, TAV's alleged failure to return RSI's leased centrifuges, has abated since that property was "returned to Plaintiff since the First Amended Complaint was filed." (*Id.* at p. 10).  TAV further argues that "[b]ecause [RSI] concedes that all the lease equipment has been returned, it has suffered no damages, and its delictual action fails as a matter of law." (*Id.* at p. 10).  RSI's First Amended Complaint omits its prior claim for return of property under La. R.S. 9:3322,[7] but RSI maintains it alleges and seeks damages for its loss of use of these centrifuges while they were withheld by TAV. (Rec.

---

[7]    Rec. Doc. 1 at ¶¶ 58 – 70.

Doc. 83 at p. 21). This Court agrees that although RSI's claim for return of centrifuges leased by TAV from RSI may have abated with the return of that property, claims for damages sustained during the withholding of the centrifuges remain viable and are adequately plead in RSI's First Amended Complaint. (FAC at ¶¶ 83 – 88). The existence of and amount of any such damages is not properly considered at this stage of litigation. Accordingly, this Court will recommend that TAV's motion be denied as to RSI's damages claim based on TAV's withholding of its property.

## Conclusion

For the reasons discussed herein, this Court recommends Valerio's Motion to Dismiss (Rec. Doc. 76) be GRANTED as to RSI's claims for contractual fraud and negligent misrepresentation arising from Leases 3 and 4, and that TAV's Partial Motion to Dismiss (Rec. Doc. 77) be granted as to RSI's claims for unjust enrichment, and as to claims for contractual fraud and negligent misrepresentation arising from Leases 3 and 4. This Court further recommends Valerio and TAV's pending motions be DENIED in all other respects, preserving such claims for further proceedings consistent with this report and recommendation.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions

accepted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

**THUS DONE** in Chambers, Lafayette, Louisiana on this 19th day of September, 2023.

_____
**DAVID J. AYO**
**UNITED STATES MAGISTRATE JUDGE**